UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
WING LEE WOO

      Movant,             <u>MEMORANDUM AND ORDER</u>

   -against-            Civil Action No.
                          CV-00-2389 (DGT)

UNITED STATES OF AMERICA

      Respondent.

--------------------------------X

Trager, J.:

    <u>Pro</u> <u>se</u> movant Wing Lee Woo ("Woo" or "movant") filed this habeas corpus motion pursuant to 28 U.S.C. § 2255, seeking to change, modify or vacate his sentence on the ground that he was denied his Sixth Amendment right to effective legal representation at his sentencing. For the reasons set forth below, the motion is denied.


**Background**


**(1)**

    Movant was a member of a narcotics trafficking operation during the years of 1988 and 1989. Woo's section 2255 Motion ("Mot.") at 1. Between September 1st and September 7th of 1989, he and others conspired to import five kilograms of heroin from Hong Kong into the United States. Transcript of Pleading ("Tr.

1

of Pleading") at 15.  Movant's role in the conspiracy was to give the heroin to a courier named "Mario" in Hong Kong for transportation into the United States through John F. Kennedy Airport.  Id.  A warrant for movant's arrest was issued out of the Eastern District of New York on September 1, 1994, and he was arrested pursuant to that warrant in June of 1995 by the Hong Kong Royal Police as he was attempting to cross the border from Hong Kong into China.  Mot. at 1; Defendant's Presentence Memorandum ("Present. Mem.") at 1; Arrest Warrant.  Movant waived extradition and was brought into the United States on or about August 11, 1995, where he was indicted for knowingly and intentionally conspiring to import heroin in violation of 21 U.S.C. §§ 952(a) and 960(a)(1) and for distributing and possessing with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1).  Present. Mem. at 1; Mot. at 1-2; Indictment; Arrest Warrant.

According to movant, "[a]lmost immediately after his arrival in the United States, [he] was approached by agents of the FBI, seeking his cooperation and assistance, in exchange for promises of a lower sentence."  Mot. at 2.  After a number of meetings with agents of the Federal Bureau of Investigation ("FBI") and an Assistant United States Attorney, movant states that he agreed to be debriefed by the United States government regarding "Asia-based high-level international heroin traffickers."  Mot. at 2;

Present. Mem. at 2. Movant states he also provided intelligence
to the Hong Kong government in order to assist with their
investigations into criminal activity. Mot. at 2-10; Present.
Mem. at 2.

Movant entered a plea of guilty on January 31, 1996,
pursuant to his cooperation agreement with the government. Mot.
at 4; Tr. of Pleading at 6, 9, 15. Magistrate Judge Azrack
administered movant's allocution after finding that movant's plea
was knowingly and voluntarily made, that he fully understood his
rights and the consequences of pleading guilty. Tr. of Pleading
at 16-17. Although Woo was initially scheduled to be sentenced
on April 11, 1996, Tr. of Pleading at 17, his sentencing was
postponed until April 22, 1999 because movant was, at that time,
cooperating with the government and he hoped his cooperation
would result in a § 5K1.1 letter, which would recommend that the
sentencing court downwardly depart from the applicable sentencing
range for his offense level. Mot. at 2, 4, 9, 11, 17.

It is undisputed that movant assisted the government by
supplying information to the FBI between the years 1995 and 1997.
Government's Response ("Response") at 1. However, the government
claims that movant stopped short of providing substantial
assistance for two reasons: (1) he refused to testify against two
individuals on trial for narcotics charges; and (2) in late 1997,
while he was incarcerated at the Metropolitan Detention Center in

3

Brooklyn ("MDC") and before he was sentenced, movant was caught processing contraband for another inmate, Ray Saladino ("Saladino"), who was implicated in a different drug trafficking scheme.[1]  Response at 1-2;  Mot. at 11.

In early 1999, movant asked to be sentenced, explaining that he had concluded that the government's promises were not reliable and that he did not want to testify against certain individuals the government asked him to testify against.  Mot. at 13, 18.

According to the government, it was explained to Woo a number of times, including during the sentencing, that there were various ways his case could proceed: (1) he could choose to be sentenced without the benefit of the § 5K1.1 letter; (2) he could postpone sentencing in order to await the government's decision regarding whether he would be needed as a witness against an individual they wanted to extradite; or (3) he could proceed with sentencing and then testify for the government if he was still needed, in return for a Rule 35 motion to reduce his sentence. Movant chose to be sentenced without a § 5K1.1 letter.

On April 22, 1999, Woo was sentenced to the minimum prison term of eighty-seven months incarceration under the guideline

---

[1] Movant bought heroin from Saladino for his own use, and also sent money to persons identified by Saladino.  Mot. at 11. Because movant decided to cooperate with the government's investigation into the Saladino matter, he was not criminally charged in connection therewith.  Sentencing Transcript ("Sent. Tr.") at 6, 13; Response at 1-2.

range, and also ordered five years of supervised release and a mandatory fifty dollar special assessment. Sent. Tr. at 14. Woo was also prohibited from possessing any firearms or destructive devices. Sent. Tr. at 14, Judgment at 3.

On April 16, 2000, movant filed a motion pursuant to 28 U.S.C. § 2255, seeking to change, modify or vacate his sentence on the ground that his Sixth Amendment right to effective legal representation at his sentencing was violated.

**(2)**

Woo predicates his section 2255 motion on the allegation that his counsel rendered ineffective assistance during the sentencing proceedings by failing to adequately apprise the sentencing court of the extent and nature of his cooperation with the government, which he contends he had given "in the expectation, and upon the promise, of a sentence below the guidelines." Mot. at 1.

Movant alleges that two particular decisions by his counsel amount to ineffective assistance of counsel. Specifically, Woo argues that: (1) his counsel did not subpoena witnesses Woo allegedly told his attorney would testify on his behalf regarding the extent of his cooperation at the sentencing hearing; and (2) his counsel did not sufficiently present the movant's cooperation with the government to the sentencing court.

Regarding the first basis for Woo's motion, he alleges that various Assistant United States Attorneys and FBI Agents made representations and promises to him that they would assist him in securing a lesser sentence in order to induce his ongoing cooperation. Mot. at 2-15, 17-19. He states that these promises ranged from "tremendous" sentence reduction to being sentenced to time-served in consideration for his cooperation. Mot. at 3, 9, 11. Movant states that a number of these officials stated that they would testify on his behalf, but that in order to do so, defense counsel would need to subpoena them. Mot. at 13. Movant argues that because his counsel never subpoenaed these witnesses, he was denied the opportunity to have favorable testimony heard on his behalf at the sentencing hearing.

Regarding the second basis for Woo's motion, movant claims that his counsel failed to present how extensive and helpful his cooperation with the government had been, and neglected to argue for a downward departure on that basis. Mot. at 1, 13-15, 17-18. Movant devotes the bulk of his nineteen page petition to detailing the extent and nature of his ongoing cooperation with the government. Mot. at 2-15, 17-19. In short, movant claims that he spent the "better part of three full years in active cooperation with the government, helping many different FBI Agents, 5 or 6 Assistant U.S. Attorneys . . . and law enforcement agents from Hong Kong, Canada, Thailand, and other countries of

Asia, with their respective cases and investigations." Mot. at 17. He argues that his counsel did not inform the Court as to the "very many substantial reasons why [it] should . . . depart downward from the sentencing guidelines." Mot. at 17. As a result, movant claims that he was denied the opportunity to have this Court take his assistance into consideration when sentencing him, thereby causing him to be sentenced to the minimum under the guidelines, without a further downward departure. Mot. at 15, 17-18.

In opposition, the government argues that: (1) movant's counsel did, in fact, raise Woo's cooperation at the sentencing hearing but that Woo's cooperation failed to rise to the level of substantiality that would have warranted a downward departure; (2) movant chose to be sentenced after being told that he would be denied the § 5K1.1 letter; and (3) even if counsel advised Woo to proceed to sentencing, under the relevant legal standard, that advice cannot be characterized as ineffective. Response at 2. The government did not specifically respond to Woo's allegation that his attorney was ineffective for failing to subpoena certain witnesses to testify to the extent of his cooperation.

**Discussion**

**(1)**

**Mootness**

Although not raised in its responsive papers, the government subsequently informed the Court that, in 2001, movant was released from custody and subsequently deported to Hong Kong.[2]

It is well-settled that a district court has jurisdiction over a habeas corpus motion only if the movant is "in custody." See, e.g., Sango v. Reno, No. 00-CV-7983, 2001 WL 1223427, at *2 (S.D.N.Y. Oct. 15, 2001) (recognizing that a district court's jurisdiction over a habeas motion under 28 U.S.C. § 2241 is predicated on the movant being "in custody") (citing Scanio v. United States, 37 F.3d 858, 860 (2d Cir. 1994) (same, with respect to a § 2255)); Knight v. Murray, No. 97-CV-6908, 1999 WL 493371, at *1 (S.D.N.Y. July 12, 1999) (same, with respect to a § 2254 motion); Cruz v. United States of America, No. 94-CV-3930, 1995 WL 580194, at *1 (S.D.N.Y. Oct. 3, 1995) (same, with respect to a § 2255 motion). If a movant is subsequently released from custody, a court will not be divested of jurisdiction as long as

_____

[2] The Bureau of Prisons confirmed that Woo was released from custody four years early based on a combination of the following: (1) time-served in Hong Kong before his extradition to the United States; (2) time-served after his arrest and before his sentencing; and (3) good behavior while in custody in the United States.

the movant was "in custody" at the time the motion was filed. See, e.g., Louise v. Costello, No. 01-CV-3987, 2002 WL 1446618, at *2 (S.D.N.Y. July 2, 2002) (stating that both the United States Supreme Court and the Second Circuit interpret the habeas statutes consistently with the proposition that a court retains subject matter jurisdiction over a habeas motion filed if the movant "was in custody at the time the petition was filed" but also citing contrary authority from Southern District of New York) (citations omitted); Sango, 2001 WL 1223427, at *2 (stating that a court is not divested of jurisdiction by a habeas movant's release from custody as long as the motion was filed while the movant was "in custody") (citing Spencer v. Kemna, 523 U.S. 1, 7 (1998) (same, with respect to a § 2254 petition)).

Here, Woo moved for habeas relief while he was still incarcerated; his subsequent release from physical confinement does not necessarily negate this Court's jurisdiction to adjudicate his motion. However, Woo's motion is moot because he has not shown some "concrete and continuing injury" sufficient to create an Article III case or controversy. Sango, 2001 WL 1223427, at *2 (citing Spencer, 523 U.S. at 7 (quoting Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990))).

Under Article III, a case becomes moot when it no longer presents or entails an actual injury that is likely to be redressed by a favorable judicial decision. Sango, 2001 WL

9

1223427, at *2 (citing <u>Spencer</u>, 523 U.S. at 7 (quoting <u>Lewis</u>, 494 U.S. at 477)); <u>see also</u> <u>United States v. Erdil</u>, 351 F. Supp. 2d 58, 60 (E.D.N.Y. 2005); <u>Louise</u>, 2002 WL 1446618, at *2 (citations omitted).  It is axiomatic that governmental restraint, whether it be incarceration or supervised release, satisfies Article III's "case or controversy" requirement because such restraint constitutes a concrete injury.  <u>Erdil</u>, 351 F. Supp. 2d at 61.  It is equally evident that, unless there is some other injury in sight, once those restrictions are no longer imposed, the injury disappears and a case ceases to meet the requirements of Article III.  <u>Id.</u>  In the habeas context, it has been consistently held that when a habeas movant is released from some form of detention, his pending habeas motion becomes moot unless the movant stands to suffer from adverse collateral consequences adequate to satisfy the requirements of Article III.  <u>Johnson v. Levine</u>, No. 00-CV-8402, 2001 WL 282719, at *1 (S.D.N.Y. Mar. 21, 2001).

Here, by virtue of his deportation, movant is no longer under custody of the United States government in any way.  Therefore, in order to make out the concrete and continuing injury required to avoid dismissal for mootness, movant bears the burden of showing that he faces some present or future hardship other than his sentence.  <u>Id.</u> at *1-2; <u>United States v. Mercurris</u>, 192 F.3d 290, 294 (2d Cir. 1999) ("There being no

10

presumption of collateral consequences, [movant] must bear the burden of demonstrating some 'concrete and continuing injury' sufficient to create an Article III case or controversy.").

Most courts that have addressed the question of whether deported non-citizens are exposed to continuing adverse collateral consequences have held that, as a matter of law, they are not. See, e.g., Louise, 2002 WL 1446618, at *2 (stating that the rationale for holding that non-citizens do not suffer continuing collateral consequences following deportation is that once they leave the United States, their rights cannot be abridged by the government but recognizing disagreement); Johnson, 2001 WL 282719, at *2 ("The [motions] of deported aliens have been subjected to this rule because, as non-citizens, they are not subject to such adverse collateral consequences as citizens who might be subject to this Government's restraints."); Knight, 1999 WL 493371, at *1 (recognizing that numerous courts have not found collateral consequences for deported aliens); cf. Sango, 2001 WL 1223427, at *2 (agreeing but recognizing disagreement among courts). The reasoning behind these courts' holdings that deported non-citizens are not subject to collateral consequences is that only United States citizens, residents and persons interested in residing in this country stand to suffer from the types of deprivations recognized as adverse collateral consequences, such as the inability to vote or to serve as a

juror.  See Johnson, 2001 WL 282719, at *2; Knight, 1999 WL
493371, at *1.  It is important to note that those courts which
have disagreed with this rationale have done so in cases where
adverse collateral consequences may have arisen from a deported
alien's possible re-entry into the United States or where the
movant's removal itself was the source of such consequences.
See, e.g., Ramirez v. Immigration & Naturalization Service, 86 F.
Supp. 2d 301, 303-04 (S.D.N.Y. 2000) (Report and Recommendation)
(citing examples of adverse collateral consequences deported
aliens may face but ultimately declining to presume such
consequences where petitioner has failed to allege any); So v.
Reno, 251 F. Supp. 2d 1112, 1121-22 (E.D.N.Y. 2003) (presuming
adverse collateral consequences, for purposes of determining
whether a deported alien's motion was moot where the movant was
challenging his removal, stating that there was a wealth of
severe consequences arising from deportation).

    Here, Woo will not suffer continuing collateral consequences
following deportation.  First, there is no indication that Woo
intends to return to the United States; during sentencing, he
expressed his desire to return to Hong Kong, Sent. Tr. at 14, and
Woo has not communicated with the Court subsequent to his
deportation nor has he provided the Court with any contact
information.  Even if Woo did intend to return to the United

States, as an alien[3] convicted of a controlled substance offense,

he would be precluded from re-entry.[4]  See Mercurris, 192 F.3d at

294 (noting that an individual convicted of "controlled substance

offenses" is inadmissible to the United States) (citing 8 U.S.C.

§§ 1182(a)(2)(A)(i)(II) & (a)(2)(C))); see also United States v.

Williams, 475 F.3d 468, 479 n.6 (2d Cir. 2007) (finding

defendant's direct appeal moot where defendant had been convicted

of a controlled substance offense and was, thus, inadmissible to

the United States).  Finally, movant is not challenging his order

of removal.  Because this Court cannot foresee any manner in

which Woo stands to suffer any adverse collateral consequences

from the length of his sentence, his motion fails to satisfy

Article III's injury-in-fact requirement.  See Ramirez, 86 F.

Supp. 2d at 304 (Report and Recommendation) (noting that

practical considerations support finding habeas petitions moot

where petition was brought pro se, the court has not heard from

petitioner since his removal and has no way to contact

_____

[3] Woo is neither a citizen nor a resident; he was
temporarily paroled into the United States for the sole purpose
of facing the criminal charges against him.

[4] Although being permanently barred from returning to the
United States is considered a collateral consequences sufficient
to prevent a habeas petition from being considered moot, see
Erdil, 351 F. Supp. 2d at 61 (citations omitted), Woo is barred
from this country based on his conviction, not the length of his
sentence.  As the instant petition only challenges movant's
sentence, and not his conviction, the denial of re-entry is not
considered a collateral consequence.  See Erdil, 351 F. Supp. 2d
at 61-2.

13

petitioner).  Accordingly, this petition is denied as moot.

**(2)**

**Ineffective Assistance of Counsel**

Even assuming, _arguendo_, that movant was able to satisfy Article III's "injury" requirement and the merits of movant's ineffective assistance claims were reached, the record does not support movant's allegations that he received ineffective assistance of counsel.

**a. The standard for evaluating ineffective assistance claims**

Claims of ineffective assistance of counsel are subjected to the well-settled test enunciated by the United States Supreme Court in _Strickland v. Washington_, 466 U.S. 668 (1984).  A viable ineffective assistance claim requires a movant to prove: (1) that counsel's performance deviated from the objective standard of reasonableness measured by "prevailing professional norms," _Id._ at 688; and (2) that there is a reasonable probability that the result of the proceeding would have been different had counsel's performance not been deficient.  _Id._ at 694.

In order to make out the first _Strickland_ prong, a movant must rebut the strong presumption that counsel's performance is "within the wide range of reasonable professional assistance." _Id._ at 689-90.  In so doing, a movant is not entitled TO rely on

"the distorting effects of hindsight."  Henry v. Poole, 409 F.3d 48, 63 (2d Cir. 2005) (quoting Strickland, 466 U.S. at 689). Instead, the challenged legal representation will be evaluated from counsel's perspective at the time his litigation decisions were made.  Id.  Moreover, counsel should be afforded wide latitude in determining litigation strategy, see Henry, 409 F.3d at 63, because there are countless ways to provide assistance in any given case and no two attorneys will devise identical defense tactics, regardless of their professional competence, see United States v. Kurti, 427 F.3d 159, 163 (2d Cir. 2005) (citing Strickland, 466 U.S. at 689).

In order to satisfy the "prejudice" prong, movant must show that there was a reasonable probability that, but for his counsel's performance, the outcome of his case would have been different.  Strickland, 466 U.S. at 694.  "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"  Strickland, 466 U.S. at 694.  A showing that counsel's errors had "some conceivable effect" on the result is insufficient to establish this prong, for "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding."  Id. at 693.

Notably, the Supreme Court has made clear that "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes

an insufficient showing on one." <u>Strickland</u>, 466 U.S. at 697.

Neither movant's claim that counsel allegedly failed to subpoena witnesses on his behalf, nor his claim that counsel inadequately conveyed his cooperation to this Court overcome the presumption that the quality of his counsel's representation was within the wide range of reasonable professional assistance or that this representation prejudiced the outcome of his case. For the following reasons, these were both either "strategic choices made by counsel after thorough investigation," which have been held by that case and its progeny to be "virtually unchallengeable," <u>Id.</u> at 690, or have not been shown to have undermined the reliability of the resulting proceeding.

**b. Counsel's alleged failure to subpoena witnesses**

Woo claims that various government agents offered to testify on movant's behalf regarding how extensive and useful his cooperation had been but that since the government did not "want to honor the promises of a 5K letter," Mot. at 12-13, these witnesses could have only testified "if they were called on to do so . . . by the defense attorney." <u>Id.</u> Movant argues that had counsel obliged his alleged request to present these witnesses, that the Court would have "probably sentenced the Movant to time-served . . . plus an appropriate extension because of the Saladino matter." Mot. at 18.

At the time of sentencing, Woo's counsel submitted "Defendant's Presentence Memorandum" ("Presentence Memorandum"), which informed the Court of movant's "extensive valuable intelligence to the United States government regarding Asia-based high-level international heroin traffickers."  Present. Mem. at 2.  Counsel also argued that intelligence officers from Hong Kong had "provided the Federal Bureau of Investigation, including [Woo's] case agent . . . with some of the details of his cooperation."  Id.  These representations effectively conveyed that movant had provided extensive valuable cooperation and intelligence; testimony Woo expected from these witnesses would have only served to duplicate what had already been presented.  Moreover, there is nothing to indicate that witness testimony would have been more effective in conveying the extent of Woo's cooperation with the government than the Presentence Memorandum, in conjunction with the arguments made at the sentencing hearing.  Thus, movant has not shown that counsel's decision not to subpoena and call witnesses at the sentencing hearing was unreasonable or that failure to do changed the outcome of the proceeding.  See United States v. Eyman, 313 F.3d 741, 743 (2d Cir. 2002) ("A failure to call a witness for tactical reasons of trial strategy does not satisfy the standard for ineffective assistance of counsel.") (internal citations omitted); U. S. ex rel. Walker v. Henderson, 492 F.2d 1311, 1314 (2d Cir. 1974),

cert. denied, Walker v. Henderson, 417 U.S. 972 (1974)(citations omitted) (whether counsel chooses to "call or bypass a particular witness is peculiarly a question of . . . trial strategy which courts will practically never second guess").

### c. Counsel's alleged failure to adequately inform the court of movant's cooperation

Woo alleges that his counsel did not adequately inform the Court of his cooperation. Movant conclusorily argues that "the Court was predisposed to receive and consider evidence of extensive cooperation during the sentencing hearing . . . and likely would have rewarded that cooperation with a downward departure." Mot. at 19. He further states that because counsel failed to advise this Court of the extent of this cooperation, "the Court considered itself bound by the guidelines." Mot. at 17.

Foremost, as discussed earlier, Woo's counsel did, in fact, inform the Court of Woo's cooperation through the submitted Presentence Memorandum as well as through arguments made to this Court at the sentencing hearing. However, Woo's counsel could not rely on Woo's cooperation as a basis for departure alone. At the time Woo was sentenced, the Sentencing Guidelines were mandatory and a sentencing judge could not depart from the Sentencing Guidelines on the basis of a defendant's cooperation unless that cooperation resulted in a § 5K1.1 letter. See, e.g.,

United States v. Difeaux, 163 F.3d 725, 728 (2d Cir. 1998)
(noting that, generally, the sentencing court cannot depart from
the Guidelines range to account for a defendant's assistance to a
federal investigation or prosecution in the absence of a motion
pursuant to section 5K1.1 made by the attorney representing the
government).  Because counsel knew by the time of the sentencing
hearing that the government was not going to provide a § 5K1.1
letter on Woo's behalf,[5] Sent. Tr. at 11, counsel had to urge the
Court to downwardly depart on other grounds in order to ensure
that Woo was rewarded for his cooperation in lieu of the § 5K1.1
letter.  Accordingly, counsel moved for a two-point downward
departure on the basis of the "totality of circumstances" instead
of reintroducing at length the various ways in which Woo had
assisted the government.  Present. Mem. at 2.  Counsel
specifically requested that Woo be sentenced to 70 months in
prison, proposing various deductions to his base offense level,
including Woo's "remorse and cooperat[ion] with the government,"
Present. Mem. at 6, and further asked this Court to factor in
Woo's acceptance of responsibility for his crime when
"determining where within the applicable guideline range he ought

---

[5] This was due, in large part, to movant being implicated in
a criminal offense, between the execution of his original
cooperation agreement and the sentencing proceedings.  The
government points out that the breach in Woo's cooperation
resulting from his involvement in the Saladino matter was not
addressed by any post-contraband cooperation arrangements.  Sent.
Tr. at 12.

to be sentenced," Present. Mem. at 2.  In response, this Court sentenced Woo to the lower end of the Guidelines range.  Sent. Tr. at 14 ("I don't think I can find a basis to downwardly depart from the guidelines, but I will give you the minimum sentence under the guidelines.").  Thus, it is clear from the record that counsel did indeed raise Woo's cooperation to the Court.

Moreover, counsel's strategic choice to assert other grounds for leniency cannot be said to be deficient representation.  See Strickland, 466 U.S. at 690 ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"); Henry, 409 F.3d at 63 (counsel should be afforded wide latitude in making strategic decisions); United States v. Gaskin, 364 F.3d 438, 468 (2d Cir. 2004) ("As a rule, counsel's decision to stipulate to certain evidence, like his decisions to offer or object to evidence, involves a strategic choice, which is 'virtually unchallengeable' if made after thorough investigation.") (citations and quotations omitted).

Finally, in light of the fact that the government declined to issue Woo a 5K1.1 letter, there is no basis to assume that a lengthier presentation of movant's cooperation would have been any more successful in making out a basis to downwardly depart from the guidelines than the evidence already on the record. Difeaux, 163 F.3d at 728 (generally, a motion made by the

government's attorney is a prerequisite for a court to be able to downwardly depart from the Sentencing Guidelines). As movant has failed to show either deficient representation or resulting prejudice, Woo's ineffective assistance claim fails. See, e.g., Favia v. United States, No. 01-CV-6385, 2007 WL 2071861, at *4-5 (E.D.N.Y. July 17, 2007) (finding baseless ineffective assistance of counsel claims in section 2255 motion where claims were based on attorney's failure to move for specific downward departures and the record was clear that attorney did, in fact, move for such departures); Robinson v. United States, No. 03-CV-1112, 2004 WL 324878, at *4 (S.D.N.Y. Feb. 19, 2004) (finding baseless ineffective assistance of counsel claim in section 2255 motion where petitioner's "attorneys in fact raised the issues . . . that are the basis for his petition").

## Conclusion

Based on the aforementioned reasons, movant's section 2255 motion is denied. No Certificate of Appealability will issue. The Clerk of the Court is directed to close the case.


Dated:      Brooklyn, New York
            October 15, 2007

                              SO ORDERED:


                              _____/s/_____
                              David G. Trager
                              United States District Judge